# United States Court of Appeals
## For the First Circuit

No. 12-1464

WEN FENG LIU,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Lipez and Thompson, Circuit Judges.

Farah Loftus on brief for petitioner.
Elizabeth R. Chapman, Trial Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, Stuart F.
Delery, Acting Assistant Attorney General, and Shelley R. Goad,
Assistant Director, on brief for respondent.

April 22, 2013

**LYNCH, Chief Judge**.  On November 10, 2009, an Immigration Judge found petitioner Wen Feng Liu removable under the Immigration and Nationality Act and denied Liu's applications for asylum, withholding of removal, and protection under the Convention Against Torture.  The Board of Immigration Appeals dismissed Liu's appeal on March 26, 2012, and Liu filed a timely petition for review.  Because the decision below was supported by substantial evidence, we deny the petition and affirm the BIA.

I.

On December 27, 2006, Liu, a native-born citizen of the People's Republic of China, entered the United States without admission or parole.  His wife and child remained in China.  Just over six months later, on July 6, 2007, Liu filed an affirmative application for asylum and withholding of removal.

Liu's application asserted that in 2003, he and his wife conceived a second child in violation of China's one-child policy and that as a result his wife was subjected to a forced abortion.  A section of the Immigration and Nationality Act provides that those "forced to abort a pregnancy" are presumptively entitled to asylum.  8 U.S.C. § 1101(a)(42)(B) (2006).  At the time of Liu's application, the Board of Immigration Appeals (BIA) had interpreted this section as extending the presumption to the husband of a woman subject to a forced abortion.  See In Re S-L-L, 24 I. & N. Dec. 1, 7 (BIA 2006) ("[Forced abortion of a] prospective child . . . is

-2-

explicitly directed against both husband and wife for violation of the Government-imposed family planning law and amounts to persecution of both parties to the marriage.").

On October 11, 2007, following an initial interview and referral from an asylum officer, Liu appeared before an Immigration Judge (IJ) and conceded removability but requested asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Various procedural matters, including a change of venue from New York to Boston, then delayed adjudication of Liu's petition on the merits for more than two years. On May 15, 2008, while the petition remained pending, the Attorney General issued an opinion overruling the BIA's interpretation of section 1101(a)(42)(B) as presumptively entitling a husband to asylum on the basis of his wife's forced abortion. See Matter of J-S-, 24 I. & N. Dec. 520, 536 (A.G. 2008); see also Xian Tong Dong v. Holder, 696 F.3d 121, 125 (1st Cir. 2012) (Attorney General's opinion in Matter of J-S- is a "reasonable interpretation" of statute).

The Attorney General acknowledged that section 1101(a)(42)(B) "does not explicitly exclude spouses from its purview." Matter of J-S-, 24 I. & N. Dec. at 530. However, he concluded that applicants whose spouses have been forced to undergo an abortion or involuntary sterilization procedure "must present proof, of which their spouse's treatment may be a part, of persecution for refusing to undergo forced abortion or

-3-

sterilization procedures or for engaging in 'other resistance' to a coercive population control program."  Id. at 535.

Following the Attorney General's decision, which petitioner does not challenge, Liu modified his asylum application. First, on October 21, 2009, he added an additional claim; he asserted that since his initial submission and meeting with the asylum officer, he and his wife had become adherents of Falun Gong, the spiritual discipline that is the target of a suppression campaign by the Chinese government.  Liu claimed that his wife had been arrested in China for practicing Falun Gong and that he feared future persecution based on his own practice.  Second, on November 9, 2009, Liu amended his original claim; he asserted for the first time that in 2003, when his wife was pregnant with their second child, Chinese officials came to his home and hit him, and that he was forced into hiding.

On November 10, 2009, Liu received a merits hearing before a Boston IJ and testified regarding the two grounds on which he sought asylum, withholding of removal, and CAT protection.  In describing his claim based on his wife's abortion, he repeated the assertions in his original and amended application.  Liu expounded somewhat on his assertion that he went into hiding; he claimed government officials abused him during this time, although he repeatedly failed to specify when or how, and he explained that although he was in hiding, he continued to work.  In describing his

claim based on his adherence to Falun Gong, Liu testified that he began practicing at his wife's suggestion in July 2008 and that his practice included weekly public exercises in Boston's Chinatown Park. He also testified that Chinese officials arrested his wife for practicing Falun Gong and held her from April to September 2009, during which time they deprived her of adequate food and physically abused her. In support of these claims, he submitted various letters and affidavits.

After considering Liu's testimony and supporting evidence, the IJ denied asylum, withholding of removal, and CAT protection. The IJ explained his reasoning in an oral decision, addressing first Liu's claim based on his wife's forced abortion. The IJ focused on the change of law announced in Matter of J-S- and noted that under the Attorney General's controlling interpretation of section 1101(a)(42)(B), Liu's claim as initially presented did not entitle him to asylum. Liu's later assertions that officials hit him and that he was forced into hiding lacked credibility, the IJ found. He concluded that Liu added these allegations only to establish that he had engaged in "other resistance" to the forced abortion program, as Matter of J-S- required. 24 I. & N. Dec. at 535. The IJ also found Liu's claim that he continued to work while in hiding "internally inconsistent." Finally, the IJ concluded that even if Liu were credible, his claimed abuse relating to his wife's forced abortion did not entitle him to asylum.

As for Liu's claimed practice of Falun Gong, the IJ expressed concern that Liu was trying "to end-run an asylum claim after there has been a change in the law having to do with his original claim." The IJ concluded that Liu's "non-credible testimony" regarding his "resistance to family coercive population control laws" was "convinc[ing]" evidence that he "is not a sincere believer in Falun Gong but, rather, has created that also in order to qualify for political asylum on a ground not contemplated by him when he fled China and came to the United States." The IJ concluded that although Liu did practice Falun Gong, his lack of sincere belief meant that he was not entitled to asylum.

Finally, because Liu failed to satisfy the requirements for asylum on the basis of either his wife's forced abortion or his own practice of Falun Gong, the IJ concluded that he also failed to satisfy the requirements for withholding of removal or CAT protection.

Liu filed a timely appeal, which the BIA dismissed on March 26, 2012. The BIA's order closely tracked the IJ's decision, explaining briefly why the IJ's factual findings were not clearly erroneous and why his legal conclusions were correct. The BIA noted in addition that Liu had not submitted medical records confirming his wife's abortion and had admitted that he could practice Falun Gong privately in China. On April 19, 2012, Liu filed a timely petition for review by this court.

When, as in this case, the BIA adopts the IJ's order but also discusses the bases for that order, we review both opinions. Cuko v. Mukasey, 522 F.3d 32, 37 (1st Cir. 2008). On questions of law, our review is de novo, "with appropriate [administrative-law] deference to the agency's interpretation of the underlying statute." Vásquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011) (quoting Stroni v. Gonzales, 454 F.3d 82, 87 (1st Cir. 2006)) (internal quotation mark omitted). On questions of fact, however, we apply the substantial evidence standard. Lobo v. Holder, 684 F.3d 11, 16 (1st Cir. 2012). In light of the IJ's superior "vantage point from which to assess the witnesses' testimonies and demeanors," this standard "accord[s] significant respect to . . . witness credibility determinations" made by the IJ and adopted by the BIA. Cuko, 522 F.3d at 37. As required by statute, we "will not reverse a determination that a witness was not credible unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Stroni v. Gonzales, 454 F.3d 82, 87 (1st Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Here, the issues are factual rather than legal. The statutory and regulatory schemes governing Liu's claims are clear. To be eligible for asylum, an applicant must be a "refugee," 8 U.S.C. § 1158(b)(1)(A), who is unwilling or unable to return to his or her home country due to "persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," id. § 1101(a)(42)(A). Withholding of removal sets the bar higher; an applicant must demonstrate that in the proposed country of removal, it is more likely than not that his or her "life or freedom would be threatened" on account of the statutorily protected asylum grounds. Id. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). Finally, CAT protection requires an applicant to demonstrate that in the proposed country of removal, "it is more likely than not that he or she would be tortured" by or with the acquiescence of the government, although not necessarily on account of the statutorily protected asylum grounds. 8 C.F.R. § 1208.16(c)(2).

The burden of establishing eligibility for asylum, withholding of removal, or CAT protection is on the applicant. Simo v. Gonzales, 445 F.3d 7, 11 (1st Cir. 2006). Credible testimony on its own may support a claim, but when an applicant presents "evidence that the factfinder supportably characterizes as incredible," such evidence "may be either disregarded or discounted." Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007).

Liu does not argue that the IJ or BIA erred in interpreting or applying the governing law. Rather, he challenges the BIA's acceptance of the IJ's adverse credibility determinations and its resulting conclusion that he is not entitled to asylum, withholding of removal, or CAT protection. Because Liu filed his

-8-

initial application for asylum after May 11, 2005, his application is governed by the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 302, 305, which sets out a "totality of the circumstances" rule for credibility determinations, Seng v. Holder, 584 F.3d 13, 18 n.2 (1st Cir. 2009). The rule permits the trier of fact to consider "all relevant factors" and make an adverse credibility determination "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

We begin our review with Liu's asylum claim related to his wife's forced abortion. Liu disputes that the IJ had any basis for finding his statements incredible. He argues that "often, petitioners give more explanations and details about their reasons for asylum in court than in the application for asylum." He concedes that he did not initially claim that officials hit him and that he was forced into hiding, but maintains "that fact alone should not have been the basis to find [him] not to be credible."

This argument misstates the IJ's conclusion. The IJ did not determine that Liu lacked credibility simply because he added details to his asylum application after first filing it. Rather, as explained above, the IJ determined that Liu lacked credibility primarily because Liu added these details only when confronted with the change in law following Matter of J-S-. The IJ further noted that one of the added details rendered Liu's story internally

-9-

inconsistent; Liu never explained how he retained his regular job after supposedly going into hiding.

The IJ's conclusions have substantial force. To the extent that "determining credibility is a matter of sound judgment and common sense . . . , when an alien's earlier statements omit any mention of a particularly significant event or datum, an IJ is justified -- at least in the absence of a compelling explanation -- in doubting the petitioner's veracity." Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 8 (1st Cir. 2008). Given "that a witness's demeanor is often a critical factor in determining [his] truthfulness," Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004), the IJ who actually heard Liu's testimony could rely on considerably more than sound judgment and common sense in making the credibility determination that he did.

Accordingly, we conclude that substantial evidence supported the IJ's finding, adopted by the BIA, that Liu lacked credibility in asserting that officials hit him and that he went into hiding following his wife's forced abortion. His asylum claim related to the abortion, which depended on those assertions, therefore fails, and his claim for withholding of removal, which requires a "more stringent" showing, necessarily fails as well. See Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010). As for Liu's CAT claim, he presents no argument as to why the

decisions below were in error, and the issue is thus waived. See Berrio-Barrera v. Gonzales, 460 F.3d 163, 168 n.2 (1st Cir. 2006).

We turn next to Liu's asylum claim based on his newfound adherence to Falun Gong. It too was a belated assertion, added after the change in law by the Attorney General in an apparent effort to strengthen a weakened claim. Here, although Liu's asylum claim related to his wife's forced abortion could be viewed as distinct from his claim related to his Falun Gong practice, the REAL ID Act gave the IJ discretion to draw the "falsus in uno, falsus in omnibus" (false in one thing, false in everything) inference. See Castañeda-Castillo v. Gonzales, 488 F.3d 17, 23 & n.6 (1st Cir. 2007) (en banc). Indeed, in some sense the Act confirmed the IJ's discretion to do so, because drawing this inference was permissible in appropriate circumstances even before adoption of the "totality of the circumstances" rule. See, e.g., Yongo v. INS, 355 F.3d 27, 34 (1st Cir. 2004) (holding that when an applicant's "credibility has been seriously forfeit, the fact-finder may be left in enough doubt about the balance of the testimony to conclude that the applicant has not proved his case").

In short, having concluded that Liu lacked credibility in describing the events surrounding his wife's forced abortion, the IJ had an ample basis for concluding that Liu was not a sincere adherent of Falun Gong. The belated nature of his purported adherence to Falun Gong and of his claim reinforces that

-11-

conclusion.  His asylum claim based on his supposed adherence thus fails.  Again, this failure means that his application for withholding of removal necessarily fails as well.  See Mendez-Barrera, 602 F.3d at 27.

As for Liu's CAT protection claim related to Falun Gong, substantial evidence supported the decisions of the BIA and the IJ.[1]  Indeed, Liu's petition for review does not even point to any error below.  Rather, he simply notes his own testimony that he fears being tortured and refers to a report from the Department of State, which he summarizes as establishing that "some Falun Gong members have been tortured in [government] custody."  Even if Liu were a sincere adherent of Falun Gong, the report does not demonstrate that he is entitled to CAT protection.  While such "reports can be a valid source of evidence with respect to CAT claims," they do not as a rule "supplant the need for particularized evidence in particular cases."  Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009).  Liu does not explain why it is "more likely than not" that he would be tortured, as CAT protection requires.  8 C.F.R. § 1208.16(c)(2).

The petition for review is denied.

---

[1] We want to be clear that an adverse credibility finding that is fatal to an asylum application is not automatically fatal to a CAT claim.  See Settenda v. Ashcroft, 377 F.3d 89, 94-95 (1st Cir. 2004).