# Matter of Charlemagne Micabalo ESTRADA, Respondent
# Matter of Vanessa Joan ESTRADA, Respondent

*Decided August 8, 2013*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A spouse or child accompanying or following to join a principal grandfathered alien cannot qualify as a derivative grandfathered alien for purposes of section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i) (2006), by virtue of a spouse or child relationship that arose after April 30, 2001.

FOR RESPONDENTS: Eric R. Welsh, Esquire, Pasadena, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Brent Landis, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY and GREER, Board Members; DONOVAN, Temporary Board Member.

DONOVAN, Temporary Board Member:

In a decision dated September 9, 2011, an Immigration Judge found the respondents removable, denied their applications for adjustment of status under section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i) (2006), and granted their request for voluntary departure.[1] The respondents have appealed from that decision.

This case addresses whether the respondents are eligible for adjustment of status under section 245(i) of the Act. We hold that because the female respondent is not a "grandfathered alien" within the meaning of 8 C.F.R. § 1245.10(a)(1)(i) (2013), the respondents are not eligible for that relief. The appeal will therefore be dismissed with respect to their applications for adjustment of status under section 245(i) of the Act. The record will be remanded for consideration of the respondents' eligibility for cancellation of removal and any other relief for which they may be eligible.

---

[1] On September 15, 2011, upon a motion by the respondents, the Immigration Judge withdrew the grant of voluntary departure and ordered the respondents removed from the United States to the Philippines.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondents are a husband and wife who are natives and citizens of the Philippines.[2]  The female respondent entered the United States on July 25, 1996, as a B-2 nonimmigrant visitor with authorization to remain until December 24, 1996.  The male respondent entered the United States on October 31, 1999, as a B-1 visitor.  His status was subsequently extended and he was given authorization to remain until July 15, 2000.  Both respondents remained in the United States beyond the period of stay authorized by their visas.  They were married on October 29, 2007.

The female respondent was the beneficiary of a Form I-140 (Immigrant Petition for Alien Worker) filed on her behalf on April 9, 2001.  That visa petition was withdrawn in February 2002.  The female respondent is currently the beneficiary of an approved Form I-140 filed on her behalf on June 12, 2006.  The male respondent is the beneficiary of a Form I-130 (Petition for Alien Relative) filed on his behalf on November 1, 2000, by his former wife.

## II.  ISSUES

The respondents seek adjustment of status under section 245(i) of the Act based on the female respondent's second Form I-140.  First, they argue that the female respondent is a grandfathered alien for purposes of section 245(i) based on the first visa petition filed on her behalf in April 2001.  Second, they argue that they are both grandfathered based on the Form I-130 filed on behalf of the male respondent in November 2000 by his former wife.

## III.  ANALYSIS

### A.  Form I-140 Filed on April 9, 2001

As an initial matter, we find that the female respondent does not qualify as a grandfathered alien for purposes of section 245(i) of the Act based on the first Form I-140 visa petition that was filed on her behalf because that petition was not approvable when filed.  In order to grandfather an alien for purposes of section 245(i), a qualifying visa petition or labor certification must have been "approvable when filed," meaning that it was (1) "properly filed," (2) "meritorious in fact," and (3) "non-frivolous."  *See* 8 C.F.R. § 1245.10(a)(1)–(3).  The respondents do not argue that the visa petition

---

[2]  The respondents' cases have been severed from that of their daughter, and a separate decision has been issued in her case.

filed on the female respondent's behalf was meritorious in fact. Rather, they argue that the petition should be considered "approvable when filed" because it was properly filed and was hypothetically approvable. In light of our intervening precedent, we disagree. *See Matter of Butt*, 26 I&N Dec. 108, 115 (BIA 2013) (discussing the difference between labor certifications and visa petitions and explaining that we have the ability to consider whether a visa petition would have been approved had it been adjudicated on the date it was filed).

The April 9, 2001, Form I-140 visa petition filed on the female respondent's behalf sought to classify her as an alien of "extraordinary ability" under section 203(b)(1)(A) of the Act, 8 U.S.C. § 1153(b)(1)(A) (2000).[3] We agree with the Immigration Judge that the evidence attached to the visa petition, including the employer's license and certificate of trade, as well as the female respondent's tax return, did not show that she would have qualified for the requested classification had the visa petition been adjudicated rather than withdrawn. Furthermore, the respondents have not produced any evidence in addition to that originally submitted with the visa petition to demonstrate that it was meritorious in fact. Accordingly, we agree with the Immigration Judge that the April 9, 2001, visa petition was not approvable when filed and that the female respondent is not a grandfathered alien based on that petition.

## B. Form I-130 Filed on November 1, 2000

The remaining issue before us is whether the female respondent qualifies as a grandfathered alien based on the family-based visa petition filed on the male respondent's behalf, where their marriage took place after April 30, 2001. To address this issue, we must determine who is a grandfathered alien for purposes of section 245(i) of the Act.

### 1. Adjustment of Status Under Section 245(a) of the Act

Section 245(a) of the Act allows an alien who has been inspected and admitted or paroled into the United States to adjust his or her status to that

---

[3] "Extraordinary ability" is defined as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2) (2013). "A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). The regulations set forth the type of evidence that may be used to demonstrate the requisite level of ability, including evidence of a "major, international recognized award." *Id.*

of an alien lawfully admitted for permanent residence.  To be eligible for adjustment of status under section 245(a), an alien must make an application for adjustment, be eligible to receive an immigrant visa, be admissible to the United States for permanent residence, and have an immigrant visa immediately available to him or her at the time the application was filed.  Such an alien must also demonstrate that he or she merits adjustment of status in the exercise of discretion.  *See Matter of Blas*, 15 I&N Dec. 626 (BIA 1974; A.G. 1976); *Matter of Arai*, 13 I&N Dec. 494 (BIA 1970).

Section 245(c) of the Act sets forth several categories of aliens who are ineligible for adjustment of status under section 245(a).  For example, certain aliens who have engaged in unauthorized employment or who are in unlawful immigration status on the date the application is filed are ineligible for adjustment of status under section 245(a).  *See* section 245(c)(2) of the Act.

## 2.  Adjustment of Status Under Section 245(i) of the Act

Section 245(i) of the Act permits adjustment of status for certain grandfathered aliens who are ineligible under section 245(a) because they entered without inspection or who are barred under section 245(c) of the Act.  In addition to having been grandfathered, applicants for adjustment of status under section 245(i) must be admissible to the United States, be eligible to receive an immigrant visa, demonstrate that an immigrant visa is immediately available, and establish that adjustment is warranted in the exercise of discretion.  *See* sections 245(i)(2)(A)–(B) of the Act; *see also Matter of Rajah*, 25 I&N Dec. 127, 134 (BIA 2009).  In most cases, applicants for adjustment under section 245(i) must also pay a $1,000 penalty fee.  *See* section 245(i)(1)(C) of the Act.

As originally enacted, section 245(i) permitted an alien who had entered the United States without inspection or who was barred under section 245(c) to apply for adjustment of status between October 1, 1994, and October 1, 1997, at which time the provision would "sunset."  *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-317, § 506(b)–(c), 108 Stat. 1724, 1765–66, (effective Oct. 1, 1994).  The October 1, 1997, sunset date was later repealed, and Congress created a new requirement that any application for section 245(i) adjustment had to be based on a visa petition that had been filed before January 14, 1998.  *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, § 111(a)–(b), 111 Stat. 2440, 2458 (enacted Nov. 26, 1997).  The January 14, 1998, deadline for the filing of qualifying visa petitions was later extended to April 30, 2001.

*See* LIFE Act Amendments of 2000, Div. B, Pub. L. No. 106-554, § 1502(a)(1), 114 Stat. 2763, 2763A-324 (enacted Dec. 21, 2000) ("LIFE Act Amendments") (effective as if included in the enactment of the Legal Immigration Family Equity Act, tit. XI, Pub. L. No. 106-553, 114 Stat. 2762, 2762A-142 (2000) ("LIFE Act")).

### 3.  Grandfathered Aliens

After the enactment of the LIFE Act and the LIFE Act Amendments, only aliens who were grandfathered by a qualifying visa petition or labor certification remained eligible for section 245(i) adjustment beyond the April 30, 2001, sunset date.  Although the term does not appear in the Act, the regulations define a "grandfathered alien" as "an alien who is the beneficiary (including a spouse or child of the alien beneficiary if eligible to receive a visa under section 203(d) of the Act)" of a qualifying visa petition or labor certification that was filed on or before April 30, 2001. 8 C.F.R. § 1245.10(a)(1)(i).

As we explained in *Matter of Ilic*, 25 I&N Dec. 717, 719 (BIA 2012), there are two categories of grandfathered aliens.  The first category, principal grandfathered aliens, encompasses the principal beneficiaries of qualifying visa petitions and labor certifications.  The second category, derivative grandfathered aliens, encompasses the dependent spouses and children of principal grandfathered aliens, if eligible to receive a visa under section 203(d) of the Act.  Both principal and derivative grandfathered aliens are independently eligible to apply for section 245(i) adjustment of status and either may be the principal adjustment applicant under that section.  However, an alien who does not qualify as either a principal or derivative grandfathered alien cannot be the principal adjustment applicant under section 245(i) of the Act.

### 4.  Spouses and Children of Grandfathered Aliens

In the context of section 245(i) of the Act, only aliens who became the principal beneficiary of a qualifying visa petition or labor certification on or before April 30, 2001, qualify as principal grandfathered aliens.  *See, e.g.*, 8 C.F.R. § 1245.10(j) ("Only the alien who was the beneficiary of the application for the labor certification on or before April 30, 2001, will be considered to have been grandfathered for purposes of . . . section 245(i) of the Act.").  Similarly, aliens who became the spouse or child of such principal grandfathered aliens on or before April 30, 2001, and who met the requirements of section 203(d) of the Act qualify as derivative grandfathered aliens.  It is less clear, however, whether the spouses or children of principal grandfathered aliens are grandfathered where the

spouse or child relationship was established after April 30, 2001. We conclude that such after-acquired spouses and children do not qualify as grandfathered aliens for purposes of section 245(i) adjustment.

Both the Act and the regulations are silent on the question whether after-acquired spouses qualify as grandfathered aliens, and a review of the legislative history of section 245(i) sheds no light on the issue. Accordingly, we turn to the Supplementary Information to a 2001 interim rule for guidance. *See Matter of Aguilar-Aquino*, 24 I&N Dec. 747, 750 (BIA 2009) (stating that we must construe regulations to effectuate the intent of the enacting body (citing *United States v. Christensen*, 419 F.2d 1401, 1403 (9th Cir. 1969))); *see also Matter of Artigas*, 23 I&N Dec. 99, 100 (BIA 2001) ("[T]here is 'no more persuasive evidence of the purpose of a [regulation] than the words by which the [Attorney General] undertook to give expression to [her] wishes.'" (quoting *Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966))).

The Attorney General has adopted an "alien-based" reading of section 245(i) of the Act, meaning that an alien is grandfathered by the filing of a qualifying visa petition or labor certification application but is not limited to that particular petition or labor certification as the only possible basis for adjusting his or her status. *See* Adjustment of Status to That Person Admitted for Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 66 Fed. Reg. 16,383, 16,384–85 (Mar. 26, 2001) (Supplementary Information); *see also Matter of Ilic*, 25 I&N Dec. at 719.

The Supplementary Information to the interim rule makes clear that the purpose of grandfathering was to allow qualifying aliens to *preserve* their eligibility for section 245(i) adjustment after the April 30, 2001, sunset date. 66 Fed. Reg. at 16,384. In other words, only those aliens who satisfied the grandfathering requirements on or before April 30, 2001, retained section 245(i) eligibility beyond that date. Aliens who did not satisfy these requirements on or before April 30, 2001, were not grandfathered for purposes of section 245(i) adjustment. *See Matter of Butt*, 26 I&N Dec. at 114–15 (recognizing that the purpose of section 245(i) was to protect those who had legitimate visa applications on file before the enactment of the LIFE Act Amendments, rather than giving applicants a "second bite of the apple" (quoting *Linares Huarcaya v. Mukasey*, 550 F.3d 224, 230 (2d Cir. 2008)) (internal quotation marks omitted)).

Under this reading of section 245(i), an alien who properly obtained grandfathered status retains it until he or she adjusts status under section 245(i). *See* 66 Fed. Reg. at 16,385 (Supplementary Information). Thus, the spouse of a principal grandfathered alien who qualifies as a derivative grandfathered alien remains grandfathered notwithstanding any subsequent changes in the relationship. *See id*. For example, divorce from or the death of a principal grandfathered alien does not terminate the derivative alien's

grandfathered status.  A subsequent change in circumstances cannot confer grandfathered status on an alien who did not meet the grandfathering requirements prior to the April 30, 2001, sunset date.  Thus, an alien who was not grandfathered as of April 30, 2001, but subsequently married a principal grandfathered alien does not, by virtue of that marriage, become a derivative grandfathered alien.

This interpretation of the grandfathering provisions of section 245(i) of the Act is consistent with the general concept of grandfathering, which includes an implicit temporal limitation.  *See Black's Law Dictionary* 718 (8th ed. 2004) (defining a "grandfather clause" as a "statutory or regulatory clause that exempts a class of persons or transactions because of circumstances existing before the new rule or regulation takes effect").  Under this concept, only those individuals who were members of the exempted class before the new rule or regulation took effect can benefit from grandfathered status.  In the context of section 245(i), only those aliens who satisfied the requirements of 8 C.F.R. § 1245.10(a)(1)(i) on or before April 30, 2001, were grandfathered within the meaning of that section and therefore retain eligibility to apply for section 245(i) adjustment beyond the sunset date.  All other aliens, including the after-acquired spouses and children of principal grandfathered aliens, fall outside of the class of grandfathered aliens.

Although no other courts have dealt with the issue presently before us, the United States Court of Appeals for the Ninth Circuit has addressed the related issue of whether an alien who married a principal grandfathered alien obtained derivative grandfathered status by virtue of that marriage where the marriage took place after the principal grandfathered alien had adjusted to lawful permanent resident status.  *Landin-Molina v. Holder*, 580 F.3d 913 (9th Cir. 2009).  In finding that the alien in that case did not acquire derivative grandfathered status, the Ninth Circuit noted that "if grandfathered aliens who adjusted to lawful permanent resident status could impart grandfathered status to relatives acquired after the adjustment occurred, then [section 245(i)]'s filing cut-off date would be nullified with respect to those individuals."  *Id.* at 920 (citing *Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1049–50 (9th Cir. 2008) (holding that the April 30, 2001, sunset provision was a fixed deadline and that section 245(i) of the Act is a "statute of repose not subject to equitable tolling")).  We conclude that interpreting section 245(i) of the Act to allow principal grandfathered aliens to confer grandfathered status on after-acquired spouses and children by virtue of a relationship that arose after April 30, 2001, would likewise nullify the filing cut-off date with respect to those individuals.  *Cf. Matter of Legaspi*, 25 I&N Dec. 328 (BIA 2010) (finding that an alien is not independently grandfathered for purposes of section 245(i) simply by virtue of marriage to a derivative grandfathered alien).

Our interpretation of section 245(i)'s grandfathering provisions is consistent with the interpretation adopted by the United States Citizenship and Immigration Services ("USCIS").  *See* Memorandum from William R. Yates, Assoc. Dir. for Operations, to USCIS officials (Mar. 9, 2005) (clarifying the eligibility requirements for adjustment of status under section 245(i)), 2005 WL 628644 ("Yates Memo").  Under current USCIS policy, "[i]f a spouse or child relationship is established after the filing of a grandfathering petition or application and is in existence at the time the principal [grandfathered] alien adjusts status, the spouse or child is not a grandfathered alien and may not independently benefit from section 245(i)" of the Act.  *Id*. § D(2), at 4.  Although this interpretation is not binding on the Board, its adoption by the USCIS further supports our conclusion that the after-acquired spouses and children of principal grandfathered aliens are not grandfathered for purposes of section 245(i) of the Act.

### 5.  Dependent Spouses and Children of Grandfathered Aliens

Although not grandfathered, qualifying after-acquired spouses and children are still able to benefit from section 245(i) of the Act in certain circumstances.  The Supplementary Information to the interim rule clarifies that a dependent spouse or child—if eligible under section 203(d) of the Act—who is accompanying or following to join a grandfathered adjustment applicant is "considered to be grandfathered" if the qualifying relationship existed before the grandfathered alien adjusts his or her status.  66 Fed. Reg. at 16,384.  We do not interpret the phrase "considered to be grandfathered" to mean that these spouses and children are independently grandfathered under section 245(i) such that they may be the principal adjustment applicant under that section.  Rather, these aliens are able to seek section 245(i) adjustment as the dependents of grandfathered aliens where the spouse or child is accompanying or following to join a principal adjustment applicant who is a grandfathered alien.

Such spouses and children are able to benefit from section 245(i) of the Act by virtue of their status as dependents under section 203(d), which provides that a spouse or child who is accompanying or following to join a principal beneficiary of an immigrant visa is entitled to the same status as that alien.  Thus, when a grandfathered alien applies for adjustment of status under section 245(i) as the principal adjustment applicant, his or her dependent spouse or children are eligible to adjust status under that section notwithstanding the fact that they are not grandfathered aliens.  This interpretation coincides with the USCIS guidance regarding the status of the dependent spouses and children of grandfathered aliens.  *See* Yates Memo, *supra*, at 4–5.

# IV.  CONCLUSION

To decide whether the female respondent qualifies as a grandfathered alien for section 245(i) eligibility purposes, we employ the foregoing principles.  As the principal beneficiary of the Form I-130 filed on his behalf on November 1, 2000, the male respondent appears to qualify as a principal grandfathered alien.  However, the respondents were not married until October 29, 2007.  Accordingly, as an after-acquired spouse, the female respondent does not qualify as a derivative grandfathered alien based on that petition.[4]

Because the female respondent is not a grandfathered alien, she is not eligible for adjustment of status under section 245(i) of the Act based on the approved employment-based visa petition filed on her behalf on June 12, 2006.  She is not eligible for adjustment of status under section 245(a) based on this petition because she is barred under section 245(c).  Because the female respondent is not eligible for adjustment of status, it follows that the male respondent is not eligible for adjustment as a spouse following or accompanying to join the female respondent under section 203(d) of the Act.

For the foregoing reasons, the respondents are not eligible for adjustment of status and their appeal will be dismissed with respect to that form of relief.  Nonetheless, we will remand for consideration of the respondents' eligibility for cancellation of removal, as well as any other relief for which they may be eligible.  The respondents raised their eligibility for cancellation of removal on several occasions during proceedings below but were not provided an opportunity to apply for such relief.  Additionally, upon consideration of the record and the respondents' arguments, we find that a remand to a different Immigration Judge is appropriate under the circumstances.  Given our disposition, we do not reach the remainder of the respondents' arguments at this time.

**ORDER:**  The respondents' appeal is dismissed with respect to their applications for adjustment of status under section 245(i) of the Act.

**FURTHER ORDER:**  The record is remanded to the Immigration Court for assignment to a new Immigration Judge and for further proceedings consistent with the foregoing opinion.

---

[4]  Because this visa petition was filed by the male respondent's former wife, the female respondent would not have been eligible to receive a visa under section 203(d) of the Act as a result of the petition.  Accordingly, even if the respondents had married on or before April 30, 2001, the female respondent would not have acquired derivative grandfathered status through this visa petition.