# United States Court of Appeals
## For the First Circuit

No. 12-1517

AKWASI AGYEI,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Circuit Judge</u>,
Souter,[*] <u>Associate Justice</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Joanna M. Golding</u> and <u>Trupti N. Patel & Associates</u> on brief for petitioner.

<u>Stuart F. Delery</u>, Acting Assistant Attorney General, Civil Division, <u>John S. Hogan</u>, Senior Litigation Counsel, and <u>Edward E. Wiggers</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

August 30, 2013

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>**. Petitioner Akwasi Agyei seeks review of the agency's decision that he was ineligible for adjustment of status and cancellation of removal, as well as the denial of his motion to reconsider and reopen. The agency's actions were premised on the finding that he had materially misrepresented to immigration officials the circumstances of his marriage, thereby making him statutorily ineligible for the relief he seeks. Agyei challenges this factual finding and the related determinations of ineligibility. He also raises due process and ineffective assistance of counsel claims.

Applying the appropriate standards of review, we must defer to the agency's factual findings. This deference compels us to deny Agyei's petition for review.

## I.

### A. Agyei's Requested Forms of Relief

Agyei is a Ghanaian national who entered the United States without inspection in 1984. His proceedings have taken a long and winding course, during which he has deployed a variety of stratagems in an effort to avert his removal. Two forms of relief, adjustment of status and cancellation of removal, are at issue in this case.

Agyei seeks adjustment of status under 8 U.S.C. § 1255(i), which permits certain noncitizens to become lawful permanent residents ("LPRs"). This statute provides a pathway to

relief for "certain grandfathered aliens" who would otherwise be ineligible to adjust status because they entered without inspection or are otherwise precluded from availing themselves of the more common form of adjustment of status. Matter of Estrada, 26 I. & N. Dec. 180, 183 (BIA 2013); see also id. 8 U.S.C. § 1255(a), (c).[1]

The statute sets forth various means of adjusting status. The one at issue in this case is the family-based mechanism, which requires as a precursor that an LPR or U.S. citizen family member petition on behalf of the noncitizen seeking to adjust status. Id. § 1255(i)(1)(B)(i). The "grandfathering" provisions of the statute require that the petition have been filed before April 30, 2001. Matter of Estrada, 26 I. & N. Dec. at 183; see also 8 U.S.C. § 1255(i)(1)(B)(i). The petition names the noncitizen seeking adjustment as the beneficiary. See id.; see generally Luevano v. Holder, 660 F.3d 1207, 1213-14 (10th Cir. 2011). This petition, called an I-130 petition, is sent to U.S. Citizenship and Immigration Services ("USCIS"), an agency within the Department of Homeland Security ("DHS"). See, e.g., Lockhart v. Napolitano, 573 F.3d 251, 253-54 (6th Cir. 2009). USCIS adjudicates the petition and determines whether it should be approved. As part of that process, USCIS verifies the existence of the family relationship. See Taing v. Napolitano, 567 F.3d 19, 21-22 (1st Cir. 2009); see

---

[1] For more background regarding the history and purpose of this statute, see Matter of Rajah, 25 I. & N. Dec. 127, 133-34 (BIA 2009).

<u>also</u> 8 U.S.C. § 1154(b).  For these purposes, Agyei has variously been the beneficiary of either his brother, Henry Opoku, or his wife, Esther Raudys, who are both U.S. citizens.

If USCIS approves the petition, the beneficiary "may then seek adjustment of status to that of a LPR by filing an . . . application."  <u>See</u> <u>Taing</u>, 567 F.3d at 21.[2]  If the beneficiary is in removal proceedings, the presiding immigration judge ("IJ") has authority over the adjustment application and decides whether the applicant meets the statute's other requirements and should receive relief.  8 C.F.R. § 1245.2(a)(1).

Agyei's second requested form of relief is cancellation of removal for certain non-LPRs, otherwise known as non-LPR cancellation.  <u>See</u> 8 U.S.C. § 1229b(b).  Although it does not entail a separate petitioning process, this form of relief also relies on a family relationship.  To be eligible for non-LPR

_____

[2] The statute also requires that an immigrant visa be "immediately available . . . at the time [the] application is filed" before the beneficiary can show eligibility for adjustment of status.  8 U.S.C. § 1255(i)(2)(B).  The availability of family-based visas is determined by a statutory formula, which sets forth preference categories based on the family relationship at issue, as well as annual limits on the number of visas available per category.  <u>See</u> <u>id.</u> §§ 1151(c), 1153(a).  Once the I-130 petition is approved, the beneficiary must then wait until a visa becomes available to file an application.  <u>See</u> <u>Succar</u> v. <u>Ashcroft</u>, 394 F.3d 8, 14-15 & n.6 (1st Cir. 2005).
For certain categories of relatives, called "immediate relatives," the approval of an I-130 petition makes a visa "immediately available."  <u>Taing</u>, 567 F.3d at 21 and n.2.  As a consequence, an application for adjustment of status may be filed concurrently with an I-130 petition on behalf of an immediate relative.  <u>Taing</u>, 567 F.3d at 21.

-4-

cancellation, the applicant must establish, inter alia, "that [his or her] removal would result in exceptional and extremely unusual hardship to the alien's [U.S. citizen or LPR] spouse, parent, or child." Id. § 1229b(b)(1)(D). Agyei has at different points relied on his wife, Raudys, or his U.S. citizen child as his qualifying relatives for the purposes of eligibility for cancellation.

## B. Agyei's Initial Proceedings Before the IJ

With that backdrop set, we now recount the facts of Agyei's case, as drawn from the agency's findings and our review of the administrative record. On October 30, 1997, his brother, Opoku, filed an I-130 petition naming Agyei as a beneficiary. The former Immigration and Naturalization Service ("INS") approved Opoku's petition on May 27, 1998. This petition was not acted upon for a number of years.[3]

In the meantime, on February 23, 1999, Agyei married Esther Raudys in Massachusetts. Later that year, immigration authorities detained Agyei and initiated removal proceedings, charging him with being present in the United States without being

---

[3] The delay in acting on Opoku's petition presumably was attributable to the low statutory preference that the sibling of a U.S. citizen receives. 8 U.S.C. § 1153(a)(4). There is a substantial wait time for an approved sibling-based petition to result in an immigrant visa. See, e.g., Visa Bulletin for August 2013, U.S. Dep't of State, http://travel.state.gov/visa/bulletin/bulletin_6028.html (last visited Aug. 22, 2013). The record suggests that a visa did not become available for Agyei through Opoku's petition until sometime in 2007 or 2008.

admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Agyei conceded removability and stated that he would apply for non-LPR cancellation, relying on Raudys as his qualifying relative. This application listed separate addresses for Raudys and himself.

On October 27, 2000, the IJ held a hearing on Agyei's cancellation application, where Agyei first offered testimony regarding his marriage. In response to direct questions regarding his living arrangements, Agyei stated that he married Raudys in February 1999, and that they lived together for six months. Eventually, Agyei and Raudys "started seeing things differently," and separated in order to "give each other space." He also testified that he intended to divorce Raudys, but that he had not yet done so in part because Raudys had terminal cancer.

At a subsequent hearing in April 2001, the IJ noted that under BIA precedents, the availability of other means of avoiding removal (such as adjustment of status) could weigh against Agyei in determining whether his wife would suffer "exceptional and extremely unusual hardship" for the purposes of establishing his eligibility for cancellation. See generally In re Monreal-Aguinaga, 23 I. & N. Dec. 56, 64-65 (BIA 2001). The IJ suggested that it would therefore behoove Agyei to look into adjusting status through his wife, rather than pursuing his application for cancellation.

-6-

**C.  Raudys's I-130 Application and the Subsequent Interviews**

As suggested, on April 27, 2001, Raudys filed a Form I-130 with USCIS in order to establish her relationship to Agyei. The version of Raudys's I-130 contained in the record is dated May 22, 1999, despite the fact that Agyei first pursued adjustment through his wife in 2001.  The petition listed the same address for both her and Agyei.

The IJ continued the removal proceedings so that USCIS could adjudicate Raudys's I-130 petition.  The case saw little activity until November 2004.  Then, as part of USCIS's investigation, immigration officers conducted separate interviews with Agyei and Raudys.[4]  USCIS's denial of Raudys's I-130, dated January 18, 2006, states that the couple gave inconsistent answers to several questions.[5]  These discrepancies included: the number of years they had known each other, Agyei's favorite sports team, their movie-watching habits, and whether they received paid magazine subscriptions at home.  USCIS also identified "many" differences in their respective drawings of their bedroom, and noted that Agyei filed taxes as a single person in 1999 and 2000.

---

[4] Agyei and Raudys were apparently first interviewed by the agency in October 2001, but the record does not disclose what transpired at that meeting.

[5] The denial letter states that Raudys was informed of the agency's intent to deny her petition the previous year.  Although Raudys apparently submitted rebuttal information in response to that notice, neither the agency's notice nor Raudys's rebuttal are in the record.

The denial letter stated that Raudys's attorney attempted to rebut these contentions by suggesting that Agyei and Raudys were "living separately from each other" so that Raudys could care for her ailing mother during the daytime, but that they spent their nights together. Based on the inconsistencies in their statements, USCIS stated that the evidence suggested that Agyei and Raudys were not living together, and it concluded that they had entered into a sham marriage for the purpose of obtaining immigration benefits. Accordingly, USCIS denied Raudys's I-130, thereby cutting off Agyei's chance to adjust status through his wife.

**D. Agyei's Further Proceedings Before the IJ and the BIA**

During a period of some confusion relating to his whereabouts, Agyei was ordered removed in absentia for failure to appear at a hearing. Once the confusion was cleared up, the agency resumed his removal proceedings in 2007. For reasons that remain unclear, neither Agyei nor the IJ had received word at this point of USCIS's January 18, 2006, denial of Raudys's I-130 petition.

At an April 12, 2007 hearing, the government attorney informed the IJ and Agyei for the first time that Raudys's I-130 petition had been denied. In response, Agyei expressed his intent to file another application for cancellation of removal, this time relying on his U.S. citizen daughter as the qualifying relative.[6]

_____

[6] Although the revised application was apparently never filed, the parties do not dispute that this particular cancellation application is the one at issue in this appeal. Due to the

-8-

On March 17, 2009, Agyei filed a motion asking to change his requested form of relief yet again. He cited USCIS's previous grant of his brother's petition in 1998, and stated his intent to adjust status via that petition. The IJ granted the motion and the proceedings were continued so that Agyei could submit supporting documentation.

The proceedings reconvened on February 16, 2010, when Raudys's I-130 petition was discussed in detail for the first time. The government argued that USCIS's determination that Agyei and Raudys had entered into a sham marriage defeated his eligibility for adjustment based on Opoku's petition. See Part II.A, infra. The IJ expressed reluctance to bar his application for relief based solely on the denial of Raudys's I-130 petition, and continued the case so that Agyei could submit evidence rebutting or explaining the inconsistencies between Raudys's statement and his. The IJ also suggested that Agyei apply for a waiver of inadmissibility for his allegedly fraudulent statements, otherwise known as a 212(i) waiver, filed on Form I-601, in order to clear his path to adjustment. See 8 U.S.C. § 1182(i) (permitting Attorney General to waive inadmissibility due to noncitizen's "fraud or willful misrepresentation of material fact").

parties' agreement on this subject, and the fact that it does not alter the outcome of this appeal, we accept that the cancellation application presently before us relied on Agyei's relationship to his child.

On June 4, 2010, Agyei submitted an affidavit stating that he did not disclose the fact of his and Raudys's separation during the I-130 interviews because he was "afraid." The affidavit attributed any inconsistencies between his and Raudys's interviews to this fear. This filing also indicated that Agyei had fathered two children with a woman named Luckie Thompson. The first was born in September 2002, before Agyei's November 2004 I-130 interview; the second was born in April 2008.

The IJ held a hearing a few weeks later, where Agyei's counsel requested more time to file a waiver of inadmissibility for his allegedly fraudulent statements. The IJ denied this request, stating that Agyei had already been placed on notice that a waiver might be necessary. The court also refused to let Agyei offer further explanation regarding his misrepresentations to the agency, noting that his affidavit conceded that he had concealed his separation. The IJ then issued a lengthy oral decision that found Agyei removable and ineligible for relief, and ordered his removal to Ghana.

Agyei appealed to the BIA, which dismissed the appeal on August 19, 2011. Due to his then-counsel's error, he failed to file a timely petition for review. On November 17, 2011, with the aid of his new and current attorney, Agyei filed a motion to reconsider and reopen. Although styled as a "motion to reopen" only, Agyei's motion also sought reconsideration of several of the

BIA's conclusions as to his direct appeal, in addition to new due process and ineffective assistance of counsel claims.

On March 29, 2012, the BIA denied the motion to the extent it requested reconsideration because it was both untimely and rehashed arguments already raised during his direct appeal. The BIA also denied the motion to reopen because Agyei was statutorily ineligible for his requested forms of relief, and thus unable to show prejudice.

Nevertheless, the BIA granted Agyei's request that it reissue the dismissal of his direct appeal, thereby giving him another chance to seek review before this court. After the BIA reissued its decision, Agyei filed a timely petition for review, challenging both the dismissal of his direct appeal and the denial of his motion to reopen and reconsider.

**II.**

The BIA adopted and affirmed the IJ, and also elaborated on some of the bases of the IJ's order. Thus, our review encompasses both the BIA's and the IJ's orders. Liu v. Holder, 714 F.3d 56, 59 (1st Cir. 2013). We review questions of law de novo, id., and factual determinations for substantial evidence, id. (citing Lobo v. Holder, 684 F.3d 11, 16 (1st Cir. 2012)). Under the latter standard, we cannot contravene the agency's factfinding unless a reasonable adjudicator would be compelled to reach a

-11-

contrary conclusion. Guaman-Loja v. Holder, 707 F.3d 119, 122 (1st Cir. 2013).

We review the denial of a motion to reopen or reconsider for abuse of discretion. Bead v. Holder, 703 F.3d 591, 593 (1st Cir. 2013) (reopening); Martinez-Lopez v. Holder, 704 F.3d 169, 171 (1st Cir. 2013) (reconsideration). A motion to reopen focuses on "new facts that will be proven at a hearing to be held if the motion is granted," 8 C.F.R. § 1003.2(c)(1), and may be denied if the movant fails to "establish[] a prima facie case of eligibility for the substantive relief sought," Larngar v. Holder, 562 F.3d 71, 74 (1st Cir. 2009). The petitioner must demonstrate that the agency committed an error of law or exerted its authority in an arbitrary or capricious manner in denying the motion. See Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007). A motion to reconsider must "set forth either an error of law or an error of fact" in the agency's decision. Arias-Valencia v. Mukasey, 529 F.3d 428, 430 n.1 (1st Cir. 2008). The petitioner is required to show that the "denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003) (internal quotation marks omitted).

The posture of this appeal requires some explanation. As noted, Agyei's petition seeks review of both the August 2011 dismissal of his direct appeal to the BIA, as well as the March

-12-

2012 denial of his motion to reopen and reconsider. Although Agyei raises a number of arguments on appeal, resolution of this case depends on one basic issue -- whether the agency erred in finding that he materially misrepresented the circumstances of his marriage. As to the direct appeal, the BIA relied on the misrepresentation finding in deeming Agyei ineligible for adjustment of status and cancellation of removal. Agyei's motion to reopen and reconsider, for its part, contended that the IJ had denied him due process by precluding him from presenting evidence in support of his cancellation application, and, relatedly, that Agyei had been prejudiced by his prior counsel's ineffective assistance in failing to ensure that this same evidence was proffered to the agency. The agency rejected these arguments because Agyei could not identify any prejudice arising from either the denial of due process or his counsel's ineffective assistance. The agency stated that even if it accepted all of Agyei's arguments, they could not alter the fact that he had made material misrepresentations to immigration officials, thereby rendering him ineligible for relief.

## A. Adjustment of Status

First, we address Agyei's ability to adjust status based on his brother's I-130 petition. Among other requirements, adjustment of status requires the applicant to show that he is admissible to the United States. 8 U.S.C. § 1255(i)(2)(A). By

statute, a noncitizen who, "by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States" is not admissible. Id. § 1182(a)(6)(C)(i).

We have previously reviewed the agency's finding that a noncitizen sought to procure an immigration benefit through fraud or willful misrepresentation as a question of fact subject to substantial deference review. See Ymeri v. Ashcroft, 387 F.3d 12, 18 (1st Cir. 2004); see also Abdulahad v. Holder, 581 F.3d 290, 295 (6th Cir. 2009) (stating that finding that noncitizen had fraudulently sought to procure immigration benefit was fact question). This approach is consistent with our treatment of the failure to establish a bona fide marriage as a factual determination. See Krazoun v. Ashcroft, 350 F.3d 208, 211-12 (1st Cir. 2003).

Here, the agency based its conclusion on "the discrepancies and omissions in the respondent's statements and documentation submitted to establish the bona fides" of his marriage to Raudys. The dominant discrepancy was Agyei's failure to disclose the fact of his separation from Raudys, despite Agyei's acknowledgment that Raudys and he had been separated before the filing of Raudys's I-130 petition and their subsequent interviews. Although a separation is not a sufficient basis for finding a marriage fraudulent, see Matter of McKee, 17 I. & N. Dec. 332, 334

(BIA 1980), it is a material fact that the agency can rely on to conclude that a marriage is not bona fide.  See, e.g., Monter v. Gonzales, 430 F.3d 546, 557-58 (2d Cir. 2005) (holding that petitioner's "failure to state that he was living separately from his wife . . . likely affected" agency's scrutiny of his marriage).

Agyei argues that his failure to disclose his separation is distinguishable from a material misrepresentation.  We are not persuaded.  For one thing, Agyei's conduct is difficult to characterize as a mere "failure to disclose."  He and Raudys submitted an I-130 petition that listed themselves as sharing an address, which was undisputedly untrue at the time they submitted it.  Although Agyei asserts that Raudys and he had prepared Raudys's I-130 petition while they were still living together and simply failed to correct the misleading statement, Agyei compounded the effect of this misinformation at his I-130 interview by answering a variety of questions regarding Raudys's and his shared sleeping arrangements, strongly suggesting that he falsely portrayed Raudys and he as living together.  These statements were more than mere omissions.  Moreover, Agyei's own affidavit acknowledges that he failed to disclose the fact of his separation from Raudys, indicating his awareness that he had offered a misleading depiction of his circumstances.  Nor does the fact that Agyei offered truthful testimony at a previous hearing before the

-15-

IJ cure his conduct during the adjudication of Raudys's I-130 petition.

If that were not enough, there were numerous inconsistencies in Agyei's and Raudys's statements to the INS interviewers about subjects as basic as the number of years they had known each other. Agyei also filed taxes as a single person during the period of his marriage to Raudys and fathered a child with another woman before his I-130 interview took place. While these facts may not have been sufficient individually to establish a finding of fraud, taken together they supply ample support for the inference that Agyei misrepresented the circumstances of his marriage to immigration officials.

In response, Agyei contends that inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(i) demands a showing that his misrepresentation resulted in the procurement of an immigration benefit, and that the statutory bar does not apply to him because Raudys's I-130 petition was denied. We have stated, however, that the statute "expressly covers attempts to procure admission or other [i]mmigration law benefits, as well as successful accomplishment of those goals." Ymeri, 387 F.3d at 20; see also 8 U.S.C. § 1182(a)(6)(C)(i) (encompassing "[a]ny alien who, by fraud . . . seeks to procure" an immigration benefit (emphasis added)). Thus, the ultimate failure of Agyei's efforts is of no moment.

-16-

Finally, Agyei raises the bare suggestion in his brief that the IJ denied him due process or abused her discretion when she failed to continue his hearing so that he could file a 212(i) waiver.[7] A successful waiver application would have given the IJ occasion to consider whether to waive this ground of inadmissibility, thereby rendering Agyei eligible for adjustment. We deem this undeveloped argument abandoned. See Vallejo Piedrahita v. Mukasey, 524 F.3d 142, 144-45 (1st Cir. 2008).

In sum, the agency did not err in concluding that Agyei was inadmissible under the statute, and that he thus was ineligible for adjustment of status.

## B. Cancellation of Removal

Agyei's application for non-LPR cancellation relies on the alleged hardship that his U.S. citizen child would suffer if he were removed. Non-LPR cancellation requires, inter alia, the applicant to demonstrate "good moral character." 8 U.S.C. § 1229b(b)(1)(B). The statute lists a number of ways that preclude an individual from making this showing as a matter of law, one of which is "giv[ing] false testimony for the purpose of obtaining any [immigration] benefits." Id. § 1101(f)(6). Testimony "includes any statement made under oath." Opere v. INS, 267 F.3d 10, 13 (1st

---

[7] This argument differs from the due process claim we address in Part II.C, infra, which concerns Agyei's ability to present evidence showing extreme and unusual hardship to his daughter, as required to establish his eligibility for non-LPR cancellation.

Cir. 2001) (citing Kungys v. United States, 485 U.S. 759, 781 (1988)). Although the statement need not be material, it must have been made "with the subjective intent of obtaining immigration or naturalization benefits." Kungys, 485 U.S. at 779-80. Importantly, "false testimony" under the statute excludes mere "concealments," id. at 781 (quotation marks omitted), as well as statements "made to satisfy other motives -- e.g., embarrassment, fear, or a desire for privacy," Restrepo v. Holder, 676 F.3d 10, 16 (1st Cir. 2012) (citing Kungys, 485 U.S. at 780). False testimony also excludes "'falsified documents or statements not made under oath.'" Kungys, 485 U.S. at 780 (quoting and adopting government's brief).

In Reynoso v. Holder, 711 F.3d 199 (1st Cir. 2013), we clarified that the applicability of a nondiscretionary bar to demonstrating good moral character is a legal question that we review de novo. Id. at 211. But in cases such as this one, where "[t]he critical finding, and . . . the real substance of our inquiry, is the finding that the alien gave false testimony," our review is for substantial evidence. Id.; see also Restrepo, 676 F.3d at 16-17. Thus, we may grant Agyei's petition only if a reasonable factfinder would be compelled to reach a conclusion contrary to the agency's. Reynoso, 711 F.3d at 211 (citing INS v. Elías-Zacarías, 502 U.S. 478, 481 (1992)).

Here the agency determined that Agyei had given false testimony because he had "provided false information to immigration authorities in connection with" his application for adjustment of status. This finding was necessarily based on statements made during his I-130 interviews.[8] As the above discussion regarding Agyei's eligibility for adjustment of status demonstrates, the record discloses that Agyei and Raudys made numerous inconsistent statements about a range of facts in the course of their interviews, supporting the finding that Agyei unsuccessfully tried to pass off his marriage as bona fide. While some of these statements may have related only to ordinary details, such as their living arrangements, movie-watching habits, and shared magazine subscriptions, the statute "imposes no materiality requirement." Opere, 267 F.3d at 14. These findings about the sham marriage in turn compel the conclusion that Agyei failed to establish good moral character. See Reynoso, 711 F.3d at 212 (noting conflicting testimony regarding "how long [petitioner] and her former spouse had cohabitated" supported conclusion that petitioner had lied to obtain immigration benefits).

---

[8] Agyei does not dispute that statements made during a visa petition interview qualify as false testimony under the statute. See Opere, 267 F.3d at 14 (noting petitioner's testimony that he "was placed under oath" at beginning of marriage interview and that his statements during that interview therefore qualified as "false testimony").

-19-

Agyei responds that his June 2010 affidavit states that he and Raudys "were afraid to tell that[] we have been separated for a while."  Because "embarrassment, fear, or a desire for privacy" do not denote an intent to obtain immigration benefits, Kungys, 485 U.S. at 780, Agyei maintains that the agency was incorrect to conclude he had the requisite fraudulent intent.  The agency did not credit this response, and the record does not require a contrary conclusion.  Moreover, Agyei's affidavit does not explain the object of his alleged fear, raising the strong inference that Agyei was "afraid" he would be denied adjustment of status.  Such a fear is indistinguishable from a subjective intent to obtain immigration benefits via fraud.  See Opere, 267 F.3d at 14 (observing that petitioner had proffered false testimony when he "lied about his living arrangements, and . . . did so out of fear that if he told the truth, he would be denied a green card").

## C. Agyei's Opportunity to Contest the Misrepresentation Finding

Agyei's motion to reopen and reconsider suggested that the IJ unfairly deprived him of the chance to contest the finding that he made material misrepresentations to immigration officials, in violation of his due process right to a full and fair hearing. He reiterates this argument on appeal.  Whatever the merits of this contention, it cannot provide the basis for a motion to reopen, which "must state new facts that will be proven at a hearing to be held if the motion is granted."  Zhu v. Holder, 622 F.3d 87, 92

-20-

(1st Cir. 2010) (citing 8 C.F.R. § 1003.2(c)(1)). The contention that the IJ improperly refused to let Agyei testify regarding his misrepresentations does not rely on "new facts." See id. (noting that "new evidence . . . must have been unavailable and undiscoverable at the former hearing" (citing 8 C.F.R. § 1003.2(c)(3)(ii))); see also Matter of O-S-G-, 24 I. & N. Dec. 56, 57-58 (BIA 2006) ("A motion to reconsider contests the correctness of the original decision based on the previous factual record, as opposed to a motion to reopen, which seeks a new hearing based on new or previously unavailable evidence.").

To the extent Agyei sought to raise this argument in a motion to reconsider, the statute states that such a motion should be filed within thirty days of the underlying agency decision. 8 U.S.C. § 1229a(c)(6)(B). This deadline is in contrast to the general time limit for filing a motion to reopen, which is ninety days. 8 U.S.C. § 1229a(c)(7)(C)(i). The agency concluded that to the extent Agyei's motion sought reconsideration of the agency's opinion, it was untimely. Agyei raises no challenge to that conclusion on appeal. Consequently, we are unable to consider his newly raised due process argument.

## D. Agyei's Remaining Arguments

Agyei's motion to reopen and reconsider also contended that (1) the IJ improperly precluded him from presenting further evidence in support of his cancellation application that would have

demonstrated extreme and unusual hardship to his U.S. citizen children; and (2) his then-counsel provided him with ineffective assistance by not making enough effort to present that same evidence to the IJ before Agyei was eventually deemed ineligible for relief. Agyei does not contest that these claims depend on his ability to show prejudice, however. See Bernal-Vallejo v. INS, 195 F.3d 56, 63-64 (1st Cir. 1999). Here, the agency correctly noted that the finding that he made material misrepresentations to immigration officials made him ineligible for both cancellation and adjustment. Agyei's additional evidence about the hardship of his family members would not have remedied that finding of ineligibility. This finding defeats his assertion that he was prejudiced by either the alleged due process violation or his counsel's allegedly flawed representation.

## III.

Agyei's petition for review is denied.