# United States Court of Appeals
## For the First Circuit

_____

No. 16-1290

YE XIAN JING,
a/k/a XIAN JING YE,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

_____

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

_____

Before

Lynch and Selya, <u>Circuit Judges</u>,
and Burroughs*, <u>District Judge</u>.

_____

<u>Gerald Karikari</u> and <u>Karikari & Associates, P.C.</u> on brief for petitioner.
<u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, <u>Emily Anne Radford</u>, Assistant Director, and <u>Aric A. Anderson</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

_____

January 4, 2017

_____

_____

* Of the District of Massachusetts, sitting by designation.

**BURROUGHS**, **District Judge**.  Ye Xian Jing a/k/a Xian Jing Ye ("Ye"), a native of China, filed a petition for review of a Board of Immigration Appeals ("BIA") decision, which dismissed his appeal of the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because the BIA's decision was supported by substantial evidence, we deny the petition.

## I.    BACKGROUND

On July 19, 2012, Ye, a citizen of China, entered the United States without admission or parole in Arizona. He was detained by the Department of Homeland Security ("DHS"), and interviewed (the "DHS Interview") on July 19, 2012. The record of the DHS Interview includes a three-page "Record of Sworn Statement in Proceedings Under Section 235(b)(1) of the Act" (hereinafter, the "Sworn Statement") and a one-page "Jurat for Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" (hereinafter, the "Jurat").[1]

The Sworn Statement, dated July 19, 2012, indicates that a Mandarin interpreter was used, and that Ye was advised by a

---

[1] During the hearing before the IJ, the Sworn Statement and Jurat were entered as a single exhibit. Ye testified that his signature was on "each and every page," including the Jurat. At the hearing, Ye never raised any issues regarding the reliability of the Jurat based on its date or distinguished it from the Sworn Statement.  Therefore, unless otherwise noted, the Jurat and the Sworn Statement will be collectively referred to as the DHS Interview.

Border Patrol agent that "U.S. law provides protection to certain persons who face prosecution, harm or torture upon return to their home country." The Border Patrol agent also informed Ye that "[i]f you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance." Ye said he understood. When asked why he came to the United States, Ye answered "I just wanted to come to the United States." When asked if he wanted to add anything at the end of the interview, Ye indicated that there was nothing else he wanted to say. Despite being specifically warned that he might not have another opportunity to raise his fears or concerns regarding removal later, Ye did not raise his alleged past persecution or fear of future persecution. Ye signed all three pages of the Sworn Statement.

The Jurat, dated July 20, 2012, is also signed by Ye, and appears to be part of the same interview documented in the Sworn Statement. The Jurat contained Ye's answers to a series of questions, including that he had left China "to live and work," that he had no fear or concern about returning, and that he would not be harmed if he returned.

Thereafter, Ye expressed a fear of returning to China, and in November 2012 he was given a "credible fear interview," where he stated that when he was in China he had been arrested and beaten by Chinese authorities at an unauthorized house church and

then detained for over a month. On November 14, 2012, an asylum officer determined that Ye had expressed a credible fear of persecution. He was subsequently charged with being removable as an alien seeking admission without required documents. He filed an asylum application, requested withholding of removal, and sought protection under CAT. In response, DHS submitted the July 19 and July 20, 2012 Sworn Statement and Jurat.

On September 4, 2014, the IJ held a hearing on the asylum application, request for withholding of removal, and CAT protection claim. Ye and a friend with whom he attended church in the United States testified, and he submitted a 2012 State Department report on religious freedom in China. During his testimony, Ye conceded his removability, but testified that he feared religious persecution in China if he returned and that he had suffered a specific instance of religious persecution by Chinese officials in the past. Ye admitted that during the DHS Interview he had answered questions through an interpreter, that the interpreter had read back the answers, and that Ye had then signed all of the pages, indicating that the answers were accurate and truthful. Ye also testified that he had not understood all of the questions, that he had been nervous during the interview, and that he had feared he would be sent back to China for saying the "wrong thing." At no point did he distinguish between the Sworn Statement and the Jurat. The 2012 State Department report on

religious freedom in China, submitted to the IJ, contained some general evidence of problems certain Christians have faced in some parts of China.

At the conclusion of the hearing, the IJ denied all of Ye's claims and ordered him removed from the United States. In support of his decision, the IJ found that Ye was not credible. Relying largely on the DHS Interview, he reasoned it was "absolutely inconceivable that if those events [being beaten and kicked by the police, arrested, and detained in China] had occurred and if indeed the respondent had left China for the sole purpose of escaping that persecution, that he would have failed to mention those events to the Border Patrol agents." The IJ found that Ye "ha[d] failed to provide a rational and reasonable explanation for his failure to state his claim to the Border Patrol agent."

Ye appealed the decision of the IJ, noting, inter alia, that the dates on the Sworn Statement and Jurat did not match. On February 18, 2016, the BIA dismissed Ye's appeal. The BIA upheld the IJ's denial of the asylum and withholding of removal applications, and concluded that Ye's CAT claim failed because "the facts do not demonstrate that the respondent would more likely than not be tortured in China by or with the acquiescence of a public official or other person acting in an official capacity." In reaching this outcome, the BIA adopted and affirmed the IJ's adverse credibility determination because "the IJ articulated

specific, cogent reasons based in the record for finding that the respondent was not credible." The BIA noted that Ye raised the issue of the Jurat's date for the first time on appeal, but concluded that he "ha[d] not shown that this affects the substance of his interview." In upholding the adverse credibility finding, the BIA emphasized that Ye had an interpreter during the DHS Interview, that he understood the interpreter, that he was re-read his answers, and that he signed the interview record attesting that his answers were truthful and accurate. The BIA additionally noted that Ye did not tell the Border Patrol agent that he was nervous or unable to understand the questions. The BIA also held that Ye's alternative argument, that despite the adverse credibility determination he had established a well-founded fear of future persecution, was not raised below, and further, that it was meritless based on the record. On March 14, 2016, Ye petitioned for review of the dismissal.

## II. STANDARD OF REVIEW

"We review the decision of the BIA and 'those portions of the [IJ]'s opinion that the BIA has adopted.'" Pheng v. Holder, 640 F.3d 43, 44 (1st Cir. 2011) (quoting Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004)). Questions of law are reviewed de novo, with appropriate deference to the agency's interpretation of the statute it administers. Romilus, 385 F.3d at 5. We review questions of fact, including credibility determinations, under the

substantial evidence standard, reversing "only if 'a reasonable adjudicator would be compelled to conclude to the contrary.'" Pheng, 640 F.3d at 44 (quoting Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009)) (further internal quotation marks omitted).

## III. DISCUSSION

Ye has the burden of establishing eligibility for asylum, withholding of removal, or CAT protection. See Wen Feng Liu v. Holder, 714 F.3d 56, 60 (1st Cir. 2013). In his petition for review, with respect to his asylum application, Ye argues (1) that the IJ clearly erred in finding him not credible, and (2) that regardless of any adverse credibility finding, he independently established a well-founded fear of persecution. Ye makes the same arguments with respect to his application for withholding for removal. Finally, he argues that no substantial evidence supported the rejection of his CAT claim.

### A. Asylum

To qualify for asylum, an applicant must be a "refugee," who faces "persecution or [has] a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" in his country of citizenship or where he "last habitually resided." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). "A well-founded fear of future persecution must be both subjectively authentic and objectively reasonable," so that "an alien must show that he genuinely fears

persecution were he to be repatriated and that his fear has an objectively reasonable basis." Villafranca v. Lynch, 797 F.3d 91, 95 (1st Cir. 2015). A well-founded fear of persecution is presumed if the applicant establishes past persecution, but the presumption can be rebutted. 8 C.F.R. § 1208.13(b). The crux of Ye's petition is his challenge to the IJ's determination that he was not credible, and the BIA's acceptance of that adverse credibility determination. Ye also argues that, even if the adverse credibility determination stands, he established a well-founded fear of future persecution.

Credible testimony can satisfy an applicant's burden of proof, but an IJ is "entitled to evaluate the asylum-seeker's credibility." Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 8 (1st Cir. 2008). Congress codified guidance on how a factfinder should make credibility determinations in such cases:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). An applicant's demeanor at a hearing, which the IJ is best positioned to assess, "is often a critical factor in determining [his] truthfulness." Wen Feng Liu, 714 F.3d at 61 (quoting Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004)). An IJ may ultimately disregard or discount incredible evidence. Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007).

There was substantial evidence supporting the IJ's adverse credibility determination and the BIA's acceptance of it. In supporting the determination, the IJ and BIA relied heavily on the DHS Interview and the fact that Ye omitted any mention whatsoever of past persecution, a fear of future persecution, or events that might imply such a fear despite the fact that he received a direct instruction soliciting such information and a warning that he might not have the opportunity to disclose his fear later. Further, the IJ and BIA relied specifically on the Jurat in which Ye affirmatively stated that he was not afraid of returning home and that he would not be harmed if he did so. In a situation where "petitioner has told different tales at different times," "a judge is entitled to 'sharply discount' the testimony." Muñoz-Monsalve, 551 F.3d at 8 (quoting Pan, 489 F.3d at 86). The BIA also explained in detail that Ye's testimony before the IJ supported the IJ's reliance on the DHS Interview; namely, Ye's own testimony confirmed that he understood the questions, that the interpreter read the answers back to him to verify their accuracy,

and that Ye signed the interview attesting to its accuracy and truthfulness. Under § 1158(b)(1)(iii), the IJ was entitled to rely on the DHS Interview, its surrounding circumstances, the omissions it evidenced, and its inconsistency with both the subsequent credible fear interview and Ye's hearing testimony in reaching the adverse credibility determination. Because "determining credibility is a matter of sound judgment and common sense . . . , when an alien's earlier statements omit any mention of a particularly significant event or datum, an IJ is justified—at least in the absence of a compelling explanation—in doubting the petitioner's veracity." Wen Feng Liu, 714 F.3d at 61 (quoting Muñoz-Monsalve, 551 F.3d at 8).

The IJ and BIA did not err in finding that Ye's explanations for the inconsistency between the DHS Interview and later claims, which included nerves, lack of understanding, and the difficult journey, were insufficiently compelling. The BIA noted that Ye never told the Border Patrol agent that he could not understand the questions or that he was too nervous to be accurate. The BIA clearly articulated its reasons for treating the DHS Interview as reliable: the interview record and Ye's subsequent testimony indicated that an interpreter was used, that Ye understood the questions asked, and that he attested to the accuracy and truthfulness of his answers. In finding Ye not credible in his explanation that he did not understand the

questions, the IJ emphasized that Ye had admitted to answering at least some of the questions during the DHS Interview correctly, which undermined his claim that he could not understand what he was being asked. The IJ reasonably found it implausible that Ye would have so blatantly omitted any mention of the alleged past persecution from the DHS Interview if it had actually happened. Finally, the BIA explained that it relied on the DHS Interview despite the different dates on the Jurat and the Sworn Statement because Ye did not raise the issue of the dates before the IJ and also failed to explain why any such discrepancy substantially affected the record.

Ye next argues that the border interview was unreliable and urges us to assess its reliability under the Second Circuit standard as set forth in Ramsameachire v. Ashcroft, 357 F.3d 169, 180 (2d Cir. 2004). This Circuit does not require IJs to undertake an inquiry into the reliability of initial interviews with Border Patrol agents using specifically enumerated factors. See, e.g., Conde Cuatzo v. Lynch, 796 F.3d 153, 156 (1st Cir. 2015) (finding inconsistencies across three interviews, including omissions in initial interview with Border Patrol, to support IJ's adverse credibility determination); see also Jianli Chen v. Holder, 703 F.3d 17, 23 (1st Cir. 2012) (holding that BIA could rely on a form customarily prepared by Border Patrol agents in supporting adverse credibility determination because "[i]t is normally enough if the

IJ reasonably finds a proffered piece of evidence to be reliable and its use to be fundamentally fair"). Ye has failed to persuade us that the current case law in this Circuit and the applicable statutes provide insufficient guidance on making credibility determinations. Section 101(a)(3) of the REAL ID Act outlines how IJs must make credibility determinations, and was added following the decision in Ramsameachire. See REAL ID Act of 2005, Pub. L. No. 109–13, Div. B, Title I, § 101(a)(3), 119 Stat. 302, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). Section 101(a)(3) specifically allows IJs to consider "the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)." 8 U.S.C. § 1158(b)(1)(B)(iii). For all the reasons already stated, including the confirmatory statements by Ye during his testimony before the IJ, the BIA's reliance on the Sworn Statement and Jurat was reasonable and supported by substantial evidence. Thus, substantial evidence supported the adverse credibility determination. Given that Ye's claim of past persecution relied on his credibility, the BIA also did not err in concluding that Ye failed to establish his eligibility for asylum based on past persecution.

Ye claims that, regardless of any adverse credibility finding, he nonetheless adequately established a well-founded fear

of future persecution. The argument runs as follows: because there is a pattern or practice of persecuting Christians in China and because Ye is Christian, Ye had a well-founded fear of future persecution. The BIA noted that Ye presented this argument for the first time before the BIA. He did not argue before the IJ that, independent of his claims of past persecution, he had a well-founded fear of future persecution because there was a pattern or practice of persecuting Christians in China. Thus, the BIA did not err in concluding that the argument was not exhausted. See Kechichian v. Mukasey, 535 F.3d 15, 22 (1st Cir. 2008).

Nor did the BIA err in finding that the claim lacked merit, in any event. Asylum "solely based on [an applicant's] membership in a protected group" is only available in "some extreme cases." Rasiah v. Holder, 589 F.3d 1, 5 (1st Cir. 2009) (emphasis omitted). The standard for proving a "pattern or practice" of persecution "is demanding and in substance requires a showing of regular and widespread persecution creating a reasonable likelihood of persecution of all persons in the group." Id. at 5. Here, the only evidence submitted regarding a pattern or practice of persecution, independent of Ye's discredited testimony regarding past persecution, was the 2012 State Department report on religious freedom in China. The report, which indicates that certain Christians can avoid persecution in certain areas under certain circumstances, is not enough. See Chen Qin v. Lynch, 833

- 13 -

F.3d 40, 45 (1st Cir. 2016) (holding that State Department report was "not enough to establish a pattern or practice of persecution" of Christians in China). Moreover, Ye's failure to tie the report to his specific circumstances proves fatal to his argument. See id. ("Nor is [the State Department report] sufficiently related to her own situation to be persuasive."). We have repeatedly recognized that the BIA is justified in concluding that there is no well-founded fear of future persecution based on a State Department report alone, when no connection is established between the incidents in the report and the petitioner's specific circumstances. See, e.g., Xian Tong Dong v. Holder, 696 F.3d 121, 126 (1st Cir. 2012) ("[O]verview reports . . . 'do very little to substantiate' claims of persecution as they do not ordinarily 'either directly or by reasonable implication, connect these foibles with the petitioner's particular situation.'" (quoting Lopez Perez v. Holder, 587 F.3d 456, 461 (1st Cir. 2009))); see also Hong Chen v. Holder, 558 F. App'x 11, 16 (1st Cir. 2014) (collecting cases). Thus, because he is unable to establish either past persecution or a well-founded fear of future persecution, Ye's asylum claim fails.

B. *Withholding of Removal*

To qualify for withholding of removal, an applicant must demonstrate that it is more likely than not that his "life or freedom would be threatened in that country because of the alien's

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). Because the bar for withholding of removal is higher than the bar for asylum, an applicant cannot prevail on a withholding application if he fails to establish the elements of an asylum claim. Jianli Chen, 703 F.3d at 27; see also Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010) ("After all, withholding of removal requires a showing, by a clear probability, that an alien will more likely than not face persecution if repatriated."). Because his asylum claim fails, Ye's withholding of removal claim necessarily fails as well.

*C. CAT Protection*

Finally, CAT protection requires an applicant to demonstrate that in the proposed country of removal, "it is more likely than not that he or she would be tortured" by or with the acquiescence of the government. 8 C.F.R. § 1208.16(c)(2); Mendez-Barrera, 602 F.3d at 27. Ye failed to present any credible, "particularized facts relating to [his] specific claim that [he] would face a likelihood of government-sanctioned torture." Mendez-Barrera, 602 F.3d at 28. Besides his discredited testimony, Ye presented a country report on religious freedom in China from 2012. Country reports "are rarely dispositive" because of their "generic nature," id., and Ye does not persuade us that the IJ or BIA erred

in their determinations. Thus, substantial evidence existed to support the BIA's rejection of Ye's CAT claim.

**IV. CONCLUSION**

For the foregoing reasons, the petition for review is **<u>DENIED</u>**.