*Pomavilla-Zaruma v. Garland*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty-four.

PRESENT:
> MYRNA PÉREZ,
> ALISON J. NATHAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

**Rosa Elvira Pomavilla-Zaruma**

> *Petitioner,*

> v.                                                                   No. 20-3230

**Merrick B. Garland, United States Attorney General**

> *Respondent.*

_____

**FOR PETITIONER:**          Reuben S. Kerben, Esq., Kerben Law Firm, P.C., Kew Gardens, NY.

**FOR RESPONDENT:**          Liza S. Murcia (Brian M. Boynton, Acting Assistant Attorney General, Anthony C. Payne, Assistant Director, Melissa Neiman-Kelting, Assistant Director, W. Manning Evans, Senior Litigation Counsel, *on the briefs*), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC.

**UPON DUE CONSIDERATION** of this petition for review of a Board of Immigration Appeals (BIA) decision and petition for rehearing, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for rehearing is **GRANTED,** our prior decision is **VACATED**, and we **REMAND** the case for further proceedings consistent with this order.

Petitioner Rosa Elvira Pomavilla-Zaruma, a native and citizen of Ecuador, seeks review of an August 24, 2020 decision of the BIA affirming an August 29, 2018 decision of an Immigration Judge (IJ) denying her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). *In re Rosa Elvira Pomavilla-Zaruma*, No. A 206 506 589 (B.I.A. Aug. 24, 2020), *aff'g*

2

No. A 206 506 589 (Immig. Ct. N.Y. City Aug. 29, 2018). After we issued our opinion in this matter, *Pomavilla-Zaruma v. Garland*, 81 F.4th 145 (2d Cir. 2023), the government petitioned for rehearing. In that petition, the government argued that our application of circuit precedent impermissibly imposed judge-made procedural rules on the agency. It also argued for the first time that this case should be remanded to the BIA because the agency failed to apply its own precedent. As explained below, the government misreads our earlier opinion and we reject the contention that our Circuit's precedent imposes additional procedural rules on the agency. However, we agree that the agency overlooked its own precedent in this case and agree with the government that remand is warranted for the agency to apply its precedent properly in the first instance. We therefore grant the government's petition on that basis, vacate our previous judgment, and issue the following order in this case. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

## I.    Background

In May 2013, Pomavilla-Zaruma attempted to enter the United States without valid entry documents. Border patrol agents apprehended her and, by

3

her account, "started hitting [her] on the back with. . . something they carry on their belts."  Certified Administrative Record (CAR) at 145.  The following day, border patrol agents interviewed her.  When asked the "purpose for [her] entry into the United States," she answered "[t]o reside and seek employment and continue my education."  *Id.* at 135.  When asked whether she feared persecution or torture if she was sent back to Ecuador, Pomavilla-Zaruma answered "[n]o."  *Id.* at 136.  She was placed in removal proceedings, conceded removability, and timely applied for asylum, withholding of removal, and relief under the Convention Against Torture.

The following year, in 2014, Pomavilla-Zaruma completed a credible fear interview where she alleged that a man in her home country, whom she identified by name, began pursuing her and trying to inappropriately touch her when she was a child, and that he began raping her when she was a teenager.  She further alleged that the man had threatened her mother, that police would not protect her because she was indigenous, and that she could not relocate because indigenous people were not permitted to move freely in Ecuador.

The asylum officer asked Pomavilla-Zaruma whether she had indicated in her border interview that she was not afraid to return to Ecuador.  She answered

4

that she "couldn't really understand" the border patrol officer because "[m]ost of it was in English." CAR at 29. She also told the asylum officer about her experience entering the United States the day before the border interview, explaining that she was "very scared" because "one officer had hit [her]." *Id.* The asylum officer then found Pomavilla-Zaruma to have a credible fear of persecution.

In 2018, Pomavilla-Zaruma testified before an IJ and echoed her claims from her credible fear interview. The government cross-examined Pomavilla-Zaruma about the border interview, specifically questioning why she had stated that she came to the United States for employment and education. She explained: "Well, to be honest with you, that day I was very nervous. I couldn't really understand much, and they were only talking in English." *Id*. at 123. The IJ expressed skepticism of that explanation, and Pomavilla-Zaruma's counsel responded that "she is somewhat confused and was confused at the time of the [border] interview." *Id*. at 129.

The IJ denied all relief because he found Pomavilla-Zaruma to be noncredible on two grounds. First, the responses she gave during the border interview about coming to the United States for employment and education and

5

not fearing persecution were inconsistent with her later account of fleeing to the United States to escape persecution. Second, her testimony that the interview was conducted in English was "simply unbelievable" because the record of the interview stated that it was conducted in Spanish and because border interviews are generally conducted in the interviewee's native language. CAR at 88.

Pomavilla-Zaruma appealed to the BIA, which affirmed the IJ's credibility decision on similar grounds in 2020. In addition to challenging the adverse credibility finding, Pomavilla-Zaruma claimed for the first time that the border interview record was improperly admitted into evidence at the IJ hearing. The BIA rejected that argument as waived and also rejected it on the merits. Pomavilla-Zaruma timely petitioned this Court for review.

On August 30, 2023, we issued an opinion, *Pomavilla-Zaruma v. Garland*, 81 F.4th 145 (2d Cir. 2023), granting Pomavilla-Zaruma's petition and remanding to the BIA. We held that the BIA correctly determined that Pomavilla-Zaruma waived any challenge to the admission of the border interview record. However, we held that the agency had failed to adequately consider the reliability of the border interview before relying on it to find her not credible, applying *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179-82 (2d Cir. 2004), which sets out certain

6

factors for evaluating the reliability of such interviews. In doing so, we clarified the law of our Circuit, holding that an IJ is required to consider the *Ramsameachire* factors *if* the record indicates that the factors are relevant. Because we could not confidently predict that the agency would reach the same conclusion as to Pomavilla-Zaruma's credibility absent its error under *Ramsameachire* and its progeny, we remanded.

The government then filed its petition for rehearing, arguing that our application of *Ramsameachire* impermissibly imposed judge-made procedural rules on the agency and overlooked intervening BIA precedent on the use of border interviews in credibility determinations in light of statutory amendments postdating *Ramsameachire*. The government noted—for the first time—that the agency in this case never applied that BIA precedent and requested a remand for the BIA to do so. As explained below, we are by no means persuaded that our application of *Ramsameachire* would impose a judge-made procedural rule. But, based on the government's new argument, we do agree that the agency should apply its own precedent regarding the reliability of border interviews in the first instance and we remand for that purpose.

## II. Border Interviews and Credibility Determinations After *Matter of J-C-H-F-*

Although, as explained below, we will remand to the agency for failing to address its own precedent, we reject the Government's argument that our Circuit's precedents regarding the agency's obligations when relying on border interviews in making credibility determinations have been abrogated. We maintain that the agency must consider the *Ramsameachire* factors *when they are relevant in a given case*. Providing this clarification requires some background on credibility determinations, our Circuit's precedents, and the Real ID Act of 2005.

On a petition for review of a BIA decision, we review the agency's factual findings, including adverse credibility findings, for substantial evidence, meaning we require "that they be supported by reasonable, substantial and probative evidence in the record when considered as a whole." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (cleaned up). Although we treat factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), we do not "defer to unreasoned rulings, or those based on legal error, faulty analysis, or misreadings of the record," *Dong Gao v. Bd. of Immigr. Appeals*, 482 F.3d 122, 127 (2d Cir. 2007) (quotation marks omitted).

Prior to the enactment of the Real ID Act of 2005, our Circuit developed case law to guide IJs' consideration of statements made in border interviews when evaluating asylum applicants' credibility. *See Ramsameachire v. Ashcroft*, 357 F.3d 169 (2d Cir. 2004). We recognized that there are inherent limitations in asylum applicants' willingness and ability to express their fear of persecution during border interviews. Persons fleeing state-sponsored abuse in their home countries may travel weeks to seek asylum in the United States, arriving travel-worn, apprehensive of governmental authorities, and lacking English fluency, access to legal counsel, or knowledge of our immigration laws. It is therefore unsurprising that some asylum seekers feel intimidated, reluctant, or confused during the interviews with border patrol officers that occur immediately after their arrival. Moreover, because a border interview is not an interview for asylum, the interviewing officers might not pose questions aimed at developing the details of an asylum claim or record a verbatim transcript of the interviewee's responses. *See id.*at 179-80 (first citing *Balasubramanrim v. I.N.S.*, 143 F.3d 157, 162–63 (3d Cir. 1998), and then citing *Senathirajah v. I.N.S.*, 157 F.3d 210, 218–20 (3d Cir. 1998)).

For all these reasons, we held in *Ramsameachire* that when the inconsistencies underlying an adverse credibility finding arise from an applicant's statements in

a border interview, the IJ "must closely examine" the border interview to ensure it is sufficiently reliable "to merit consideration." 357 F.3d at 179. Nor are we alone in this regard. Other circuits have similarly cautioned IJs against uncritical reliance on statements made in border interviews, given the particular circumstances of those interviews. *See, e.g.*, *Qing Hua Lin v. Holder*, 736 F.3d 343, 353 (4th Cir. 2013); *Lin Lin Tang v. United States Atty. Gen.*, 578 F.3d 1270, 1278–80 (11th Cir. 2009); *Yan Xia Zhu v. Mukasey*, 537 F.3d 1034, 1040–41 (9th Cir. 2008); *Moab v. Gonzales*, 500 F.3d 656, 660–61 (7th Cir. 2007).

Recognizing the inherent problems in relying on border interviews, we articulated four non-exhaustive factors in *Ramsameachire* that "provide the analytical framework for assessing the reliability" of such interviews. 357 F.3d at 180. A border interview record is "inherently less reliable" if (1) the record "merely summarizes or paraphrases the [noncitizen]'s statements" rather than including "a verbatim account or transcript," (2) "the questions asked are not designed to elicit the details of an asylum claim, or the . . . officer fails to ask follow-up questions that would aid the [noncitizen] in developing his or her account," (3) "the [noncitizen] appears to have been reluctant to reveal information to [immigration] officials because of prior interrogation sessions or other coercive

experiences in his or her home country," or (4) "the [noncitizen]'s answers to the questions posed suggest that the [noncitizen] did not understand English or the translations provided by the interpreter." *Id.* (cleaned up).

We stated that "[i]n all cases," "[t]hese aspects of the interview *must be deemed reliable* before the [agency] uses the interview to assess the [applicant's] credibility." *Id.* (emphasis added). After *Ramsameachire*, however, our Court's subsequent opinions left some uncertainty around whether consideration of the *Ramsameachire* factors is actually required of IJs or simply best practice. *See Latifi v. Gonzales*, 430 F.3d 103, 105 (2d Cir. 2005); *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 396 (2d Cir. 2005).

Soon after our decision in *Ramsameachire*, Congress enacted the Real ID Act of 2005. *See* Div. B of Pub. L. No. 109-13, 119 Stat. 302 (Real ID Act). The Real ID Act codified how IJs are to conduct their credibility determinations. As relevant here, the Real ID Act broadly allows IJs to "base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made)," while making clear that they should "[c]onsider[] the totality of the circumstances, and all relevant

11

factors[.]"   8 U.S.C. § 1158(b)(1)(B)(iii).

Seeking to reconcile our case law, we held in the prior opinion that "an IJ is required to consider the *Ramsameachire* factors before relying on a border interview for an adverse credibility determination *if* the record indicates the factors may be relevant."   *Pomavilla-Zaruma*, 81 F.4th at 151 (emphasis in original).   In its petition for rehearing, the government argues that we failed to consider intervening authority from the BIA: *Matter of J-C-H-F-*, 27 I&N Dec. 211 (BIA 2018), a published decision regarding how IJs are to evaluate and use border interviews in making credibility determinations.   The government also argues that our application of *Ramsameachire* imposed a judge-made procedural rule on the agency, in violation of *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021), and it further contends that *Ming Dai* has abrogated any application of the *Ramsameachire* factors. We disagree.

First, our understanding of an IJ's obligations under *Ramsameachire* is entirely consistent with *Matter of J-C-H-F-*.   In that opinion, the BIA interpreted *Ramsameachire* in light of Congress's enactment of the Real ID Act.   It interpreted the Real ID Act to allow consideration of "statements made in border and airport interviews, as long as the [IJ] takes into account any issues regarding the

12

circumstances under which they were made." 27 I&N Dec. at 213. Noting that our Court had adopted a set of factors in *Ramsameachire* for the IJ to assess in determining whether a border interview was reliable, the BIA agreed that "the factors listed in *Ramsameachire* are proper considerations for assessing the reliability of an interview." *Id.* at 215. However, the BIA clarified that an IJ "should assess the accuracy and reliability of the interview based on the totality of the circumstances, rather than relying on any one factor among a list or mandated set of inquiries." *Id.*

In reaching its conclusion, the BIA cited favorably to a First Circuit decision that declined to adopt *Ramsameachire*. *See id.* (citing *Ye v. Lynch*, 845 F.3d 38, 44 (1st Cir. 2017)). The First Circuit's decision rejected the idea that IJs must always "undertake an inquiry into the reliability of initial interviews with Border Patrol agents using specifically enumerated factors." *Ye*, 845 F.3d at 44. And the BIA agreed with the First Circuit insofar as it "declined to employ a checklist" or impose on IJs "a list or mandated set of inquiries." 27 I&N Dec. at 215. However, that is beside the point; we do not read *Ramsameachire* to impose this type of mandatory checklist. Contrary to the government's argument, the BIA's analysis in *Matter of J-C-H-F-*, drawing on the reasoning of the First Circuit, does

13

not entail a repudiation of our Circuit's case law.

Rather, the qualified reading of *Ramsameachire* this panel adopted is consistent with *Matter of J-C-H-F-*, which itself acknowledges the continued relevance of the *Ramsameachire* factors. As stated, we do not suggest that there is a mandatory checklist of inquiries for the evaluation of border interviews in all cases. In requiring consideration of the *Ramsameachire* factors *only when there is a basis for their relevance in the record*, we would simply hold the agency to its statutory obligation to "[c]onsider[] . . . all relevant factors" and "consider[] the circumstances under which [border interview] statements were made." 8 U.S.C. § 1158(b)(1)(B)(iii).

In other words, our understanding of the continued import of *Ramsameachire* derives from statutory text. We agree, in short, with the Eleventh Circuit that "when an IJ 'consider[s] the circumstances' of an airport interview, the IJ should keep in mind that an airport interview is not an application for asylum." *Lin Lin Tang*, 578 F.3d at 1279 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii) and subsequently citing *Ramsameachire*, 357 F.3d at 180). And we add that consideration of "all relevant factors," 8 U.S.C. § 1158(b)(1)(B)(iii), necessarily includes consideration of the factors unique to border interviews that we identified in *Ramsameachire*—when

14

they are relevant in a given case.

The continued application of *Ramsameachire* thus does not impose any "additional judge-made requirements on agencies that Congress has not prescribed[.]" *Ming Dai*, 593 U.S. at 365 (citing *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978)). On the contrary, it merely ensures that the agency is abiding by the governing statute and the law imposed by Congress, which accords with our limited role in reviewing BIA decisions.

Consistent with *Matter of J-C-H-F-* and the REAL ID Act, when the BIA applies its precedent upon remand and evaluates whether it should rely on statements made in Pomavilla-Zaruma's border interview to evaluate her credibility, it should consider "all relevant factors" and "the circumstances under which the statements were made." 8 U.S.C. § 1158(b)(1)(B)(iii). *Ramsameachire* sets out what some of those relevant factors and circumstances are for border interviews. We would thus understand failure to consider those factors, if they are relevant based on the record, to be error—under the BIA's precedent, under our precedent, and under the Real ID Act.

III.    **The BIA's Failure to Address Its Precedent**

Although we believe the BIA erred when it failed to consider certain

15

*Ramsameachire* factors that were relevant in this case, we remand on a narrower ground. We have consistently held that the agency is required to follow its own precedent, and we have remanded when it has failed to do so. *See Paucar v. Garland*, 84 F.4th 71, 87 (2d Cir. 2023); *Ojo v. Garland*, 25 F.4th 152, 168 (2d Cir. 2022). Here, as the government concedes, the agency in this case failed to address or apply *Matter of J-C-H-F-*, which was directly relevant to its consideration of Pomavilla-Zaruma's interview and credibility. We therefore grant the government's request to remand for the agency to apply its own precedential opinion in considering Pomavilla-Zaruma's credibility. *See Ojo*, 25 F.4th at 168 ("[T]he agency's failure to follow its own precedent . . . requires remand[.]"); *cf. Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 296 (2d Cir. 2006) ("[A]n administrative agency must adhere to its own regulations.") (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); 8 C.F.R. § 1003.1(g).

## IV. Admission of the Border Interview Record

Finally, we again reject Pomavilla-Zaruma's argument that her border interview record was improperly admitted into evidence at her IJ hearing. When, as in this case, the BIA declines to consider an issue because it is waived, "this Court's review is limited to whether the BIA erred in deeming the argument

16

waived." *Prabhudial v. Holder*, 780 F.3d 553, 555–56 (2d Cir. 2015). "[T]he BIA may refuse to consider an issue that could have been, but was not, raised before an IJ," *id.* at 555, and here, the BIA was correct as a factual matter that neither Pomavilla-Zaruma nor her counsel objected to the border interview record's admission. Therefore, the BIA did not err in deeming Pomavilla-Zaruma's evidentiary argument waived. Moreover, Pomavilla-Zaruma did not address the BIA's waiver finding in her petition to this Court and thereby abandoned any challenge to it. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005).

\* \* \*

For the foregoing reasons, the government's petition for rehearing is **GRANTED,** our prior decision is **VACATED**, and we **REMAND** the case for further proceedings consistent with this order. This panel retains jurisdiction to rule, if necessary, on the issues raised in a petition for review after the disposition of the remand. *See Shi Liang Lin v. DOJ*, 416 F.3d 184, 192 (2d Cir. 2005) (retaining jurisdiction to decide issues on appeal following remand to the BIA); *cf. United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir. 1994) (retaining jurisdiction while remanding to the district court for supplementation of the record). Pomavilla-Zaruma may return the case to this Court by notifying the Clerk of the Court

17

within thirty days of entry of a final BIA order on remand.   Such notification will not require the filing of a new notice of appeal.   If notification occurs, the matter will be referred automatically to this panel for disposition.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

18